STATE of Iowa, Appellee,

and

Iowa Civil Rights Commission,
Intervenor–Amicus Curiae,

v.

Joan KEDING and Fred Keding, Individu-
ally and d/b/a Country Estates Mobile
Home Park, an Unincorporated Associa-
tion, Appellants.

No. 94–1883.

Supreme Court of Iowa.

Sept. 18, 1996.

Harold J. DeLange, II, Davenport, for ap-
pellants.

Thomas J. Miller, Attorney General, and
Teresa Baustian, Assistant Attorney General,
for appellee and Intervenor–Amicus Curiae.

Considered by McGIVERIN, C.J., and
LAVORATO, SNELL, ANDREASEN, and
TERNUS, JJ.

SNELL, Justice.

Appellants, Joan and Fred Keding, appeal
from a decision of the district court to grant
a motion for judgment notwithstanding the
verdict, finding that appellants violated the
Iowa Civil Rights Act as a matter of law.
We affirm.

I.   Factual and Procedural Background

Joan and Fred Keding are the owners of
the Country Estates Mobile Home Park, a

residential development for mobile homes and trailers. In May 1992, the Kedings issued a policy statement in the park newsletter indicating they were "contemplating" making Country Estates an "adult park" and as a result would no longer sign rental agreements with people who had children or intended to have children. Tenants who already had children would be allowed to remain at the park so long as they followed the other rules and regulations. The statement was reiterated in an October 1992 newsletter to dispel any confusion over the new policy. Three plaintiffs commenced an action in district court alleging, among other things, housing discrimination on the basis of familial status, in violation of the Iowa Civil Rights Act and the federal Fair Housing Act. The State of Iowa intervened on behalf of the plaintiffs for the civil rights claims. The State alleged that publication of the "adult park" policy in the newsletter illegally discriminated on the basis of familial status. By consent the matter was tried to a jury. During trial, the State sought a directed verdict on the grounds that the notice posted in the newsletter was discriminatory as a. matter of law. The motion was denied and the jury returned a verdict in favor of the defendants. The State then moved for judgment notwithstanding the verdict, reasserting the grounds it had raised in its motion for directed verdict. The district court found that the publication was discriminatory as a matter of law and set aside the jury verdict. The Kedings were enjoined from further discrimination and were assessed a civil penalty of $5000 and costs in the amount of $1465. It is from this judgment that they appeal.

## II. Standard of Review

In reviewing the district court's ruling on a judgment notwithstanding the verdict, our review is for errors at law. Iowa R.App. P. 4. A judgment notwithstanding the verdict must be based on the grounds stated in the motion for directed verdict and our review is limited to those grounds. *Watson v. Lewis*, 272 N.W.2d 459, 461 (Iowa 1978). We must apply the same standard as the district court by considering the evidence in the light most favorable to the party against whom the motion is directed and conduct our review in favor of upholding the jury verdict. *Id.* We then decide whether there was sufficient evidence to generate a jury question. *Id.* at 463.

## III. Issues on Appeal

### A. Appropriateness of Judgment Notwithstanding the Verdict Order

The outcome of this case turns upon whether the policy notice in the park newsletter is discriminatory as a matter of law, such that the district court was correct in granting the State's motion for judgment notwithstanding the verdict. The State's motion is based on the publication of park policies in monthly newsletters. These newsletters, which were published by the Kedings and distributed to the tenants of the park, twice contained statements the State contends are facially discriminatory. In May 1992, one section of the newsletter read:

County Estates has been contemplating an all-adult park. Therefore, there will be no more rental agreements signed with people who either have children or are planning on having children in the future. Tenants with children that are registered and reside with Country Estates Mobile Home Park at present time may stay as long as they abide by all rules and regulations of Country Estates M.H.P.

Additionally, in October of 1992, the same policy was reiterated to the tenants:

In May of 1992 a newsletter was sent out stating that Country Estates Mobile Home was contemplating an all-adult park. Therefore, there will be no more rental agreements signed with people who either have children or are planning on having children in the future. Tenants with children at present time may stay as long as they abide by all rules and regulations of Country Estates M.H.P. If problems arise their rental agreement will terminate. We apologize to those few of you who did not receive a newsletter and we hope this bulletin clears the controversy within the park.

It is the content of these two newsletters that serves as the basis for the State's mo-

tion for a directed verdict, and ultimately their motion for judgment notwithstanding the verdict.

The Iowa Civil Rights Act of 1965 as amended expressly prohibits, inter alia, housing discrimination based on familial status. Section 216.8(3) of the Iowa Code makes it illegal for any owner of rights to housing or real property

> To directly or indirectly advertise, or in any other manner indicate or publicize that purchase, rental, lease, assignment, or sublease of any real property or housing accommodation ... by persons of any particular ... familial status is unwelcome, objectionable, not acceptable or not solicited.

Iowa Code § 216.8(3) (1995).

This portion of the Iowa Civil Rights Act was patterned after the 1988 amendments to the federal Fair Housing Act (FHA). The FHA contains an almost identical provision which makes it unlawful for a person

> To make, print, or publish ... any notice, statement, or advertisement, with respect to the sale or rental of a dwelling that indicates any preference, limitation, or discrimination based on ... familial status ... or an intention to make any such preference, limitation, or discrimination.

42 U.S.C. § 3604 (1994).

Given the similarities between the two pieces of legislation, federal court decisions interpreting the FHA are persuasive when we consider the provisions of the Iowa Act. *See, e.g., Lynch v. City of Des Moines,* 454 N.W.2d 827, 833 n. 5 (Iowa 1990).

■ The standard for determining whether a particular statement or advertisement is discriminatory is an objective one. The analysis calls for a determination of how an "ordinary reader" would interpret the publication. *Ragin v. New York Times,* 923 F.2d 995, 999 (2d Cir.), *cert. denied,* 502 U.S. 821, 112 S.Ct. 81, 116 L.Ed.2d 54 (1991); *United States v. Hunter,* 459 F.2d 205, 215 (4th Cir.), *cert. denied,* 409 U.S. 934, 93 S.Ct. 235, 34 L.Ed.2d 189 (1972). As the Second Circuit has recognized, "[t]he 'ordinary reader' is nothing more, but nothing less, than the common law's 'reasonable man': that familiar creature by whose standards human conduct has been judged for centuries." *Ragin,* 923 F.2d at 1002 (citation omitted). Thus in determining whether a particular statement or advertisement is discriminatory, we must look to the perspective of the reader and whether an objective person would find the statement to be discriminatory. *Hunter,* 459 F.2d at 215. Accordingly, the subjective intent of the Kedings is not controlling. *Ragin,* 923 F.2d at 1000. Their assertion that they merely "contemplated" the discriminatory policy and did not actually intend to implement it is irrelevant if an ordinary reader would find the publication discriminates on its face between prospective tenants with children and those without.

■ The Kedings attempt to distinguish the cases establishing the objective reader standard by pointing out the discriminatory statements in those cases were commercial advertisements, whereas their statements were published in internal newsletters. They contend the newsletters were neither solicitations for rental nor were they commercial advertisements seeking rental or occupancy for the park. But we do not find this distinction to be apt. We construe the language of section 216.8(3) as pertaining not only to commercial advertisements, but to any other discriminatory publications as well. Distribution of the newsletter to members of the park falls within the scope of the statute that proscribes publication of discriminatory statements via advertisement or *"in any other manner."* Iowa Code § 216.8(3) (emphasis added). The Seventh Circuit has come to a similar conclusion in interpreting the relevant section of the FHA, holding "Section 3604(c) prohibits the making or publishing of *any statement* or advertisement that 'indicates' any preference or limitation based on, among other factors, race or family status." *Jancik v. HUD,* 44 F.3d 553, 556 (7th Cir. 1995) (emphasis added). In fact, the instant case presents an unusually blatant form of discrimination. Most of the cases interpreting section 3604(c) involve more subtle forms of discrimination, not a clear and unequivocal statement that rental would be denied to people with families. *See, e.g., Housing Opportunities Made Equal, Inc. v. Cincinnati*

*Enquirer, Inc.,* 943 F.2d 644 (6th Cir.1991); *Spann v. Colonial Village, Inc.,* 899 F.2d 24 (D.C.Cir.), *cert. denied,* 498 U.S. 980, 111 S.Ct. 508, 112 L.Ed.2d 521 (1990); *Fenwick–Schafer v. Sterling Homes Corp.,* 774 F.Supp. 361 (D.Md.1991). Thus, we believe that both newsletters are discriminatory as a matter of law and there was no genuine issue of material fact to be submitted to the jury.

Defendants accuse the district court of using "tunnel vision" in granting the motion for judgment notwithstanding the verdict. But the court did exactly as is required. It must read the advertisement with objective eyes, thus necessitating the need for such a narrow consideration of the evidence. Despite the appellants' claim that they were only "contemplating" a discriminatory practice and that it was never instituted, the plain language of their notice states they will not rent to families. The Iowa statute only requires publication of such a notice; the State need not prove that the Kedings actually put their policy into practice. Thus, neither the testimony of the Kedings nor the testimony of the three individual plaintiffs is determinative in resolving whether the newsletter is illegal as a matter of law.

■ Appellants' contention that the judgment of the district court should be reversed merely because the court initially denied the State's motion for directed verdict runs contrary to the purpose of the J.N.O.V. procedural device. To deny a judgment notwithstanding the verdict on the ground that the court had already refused to grant a motion for a directed verdict would render any motion for judgment notwithstanding the verdict useless. This court has adopted the "Uhlenhopp rule" which encourages the district court to deny a motion for directed verdict, even if it is clear the movant is entitled to judgment as a matter of law. *Reed v. Chrysler Corp.,* 494 N.W.2d 224, 229 (Iowa 1992). Instead, the court should submit the case to the jury to avoid another trial in case of error. After the jury returns a verdict the court may grant a motion for judgment notwithstanding the verdict, as long as it is based on the same grounds as the original motion at the close of evidence and the movant is entitled to judgment as a

matter of law. *Id.; Johnson v. Dodgen,* 451 N.W.2d 168, 171 (Iowa 1990). Accordingly, the district court was correct in granting the State's motion even though the motion for directed verdict was initially denied.

**B.  Attorney Fees**

The Kedings contend that the district court erred in failing to rule on an award of fees and costs to them. Section 216.17A(11) of the Iowa Code provides for an award of attorney fees and reimbursement for court costs to the *prevailing party.* Since the motion for judgment notwithstanding the verdict is upheld, appellants' application for such fees is moot.

**IV.  Conclusion**

As this court has noted before

It rarely happens that a plaintiff is entitled to a directed verdict or judgment notwithstanding the verdict but when a case is clearly established and not refuted and the tendered defense is without support such a motion should be sustained.

*Sorensen Health Studio, No. 11, Inc. v. McCoy,* 261 Iowa 891, 896, 156 N.W.2d 341, 344 (1968). This case is one where the illegality of the offending statement is clearly established and the defense presented does not dispel the fact that the newsletter violates the Iowa Civil Rights Act as a matter of law. The order of the district court to grant the State's motion for judgment notwithstanding the verdict is supported by the record and is not erroneous. The decision of the district court is affirmed.

**AFFIRMED.**