# IN THE COURT OF APPEALS OF IOWA

No. 16-2145
Filed February 6, 2019

**LUANN HUSS,**
    Plaintiff-Appellee,

**vs.**

**THE STATE OF IOWA and IOWA STATE UNIVERSITY OF SCIENCE AND TECHNOLOGY,**
    Defendants-Appellants.
_____

Appeal from the Iowa District Court for Polk County, Jeffrey D. Farrell, Judge.

Defendants appeal from the grant of a motion for judgment notwithstanding the verdict.  **REVERSED AND REMANDED.**

Thomas J. Miller, Attorney General, and George A. Carroll, Assistant Attorney General, for appellants.

David Albrecht, Brooke Timmer (until withdrawal), and Whitney Judkins (until withdrawal) of Fiedler & Timmer, P.L.L.C., Johnston, for appellee.

Heard by Mullins P.J., McDonald, J., and Danilson, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2019).

**MCDONALD, Judge.**

The State of Iowa and Iowa State University (herein collectively referred to as ISU) appeal from the entry of judgment notwithstanding the verdict (JNOV) in favor of former employee Luann Huss on her claims of disability discrimination and failure to accommodate.

Huss worked for ISU in various positions from 1986 to 2014. In 2006, Huss began to regularly experience a runny nose, dry eyes, fatigue, and headaches. She attributed these conditions to her work environment. By 2010, Huss's symptoms worsened, and she also experienced pain in her teeth and jaw, tingling and numbness around her lips, a raspy voice, and heavy breathing. After bringing her difficulties to a supervisor's attention, ISU conducted air-quality testing in 2010 and 2011 in her work area. These tests revealed a normal amount of mold when compared to mold levels outdoors. In an effort to improve Huss's work environment, ISU dusted, vacuumed, cleaned the office, and hired a company to clean the air handling unit and vacuum the air ducts. In September 2012, ISU conducted further testing for mold and volatile organic compounds. The test results were normal and consistent with other university buildings.

Despite ISU's efforts, Huss continued to suffer from her symptoms. ISU undertook additional remediation efforts totaling $30,000. During the remediation, Huss relocated to another office space. Upon completion of the remediation efforts, Huss moved back into her office for a couple of days before requesting a respirator. She was provided a half-mask respirator.

Huss received treatment from a physician during this time period. Huss's physician described Huss's impairment as "severe allergies to mold spore

exposure" and recommended that Huss "indefinitely" move offices to a building without mold and wear "protective gear when exposure occurs." Upon her physician's recommendation, Huss was placed on medical leave in October 2013. Huss returned to work on January 2, 2014 and was there for less than two hours before she suffered a severe reaction. She was again placed on medical leave until April 5, 2014. Around this time, she applied for long-term disability benefits. In support of this claim, Huss's physician indicated, for the first time, Huss "developed Multiple Chemical Sensitivity," also called "Toxicant Induced loss of Tolerance." The physician also made recommendations to ISU: "In view of Luann Huss' severe disabling environmental allergy, I recommend that her office be moved, and she be relocated to an area that does not seem to trigger acute reactions." The physician never submitted any documentation of disability forms.

Huss ran out of accrued leave on March 13, 2014 and failed to return to work. Subsequently, ISU terminated Huss's employment.

Huss filed an action for disability discrimination, failure to accommodate, and retaliation. Following a seven-day jury trial, Huss moved for directed verdict, which the district court denied. The jury then returned a unanimous verdict in favor of ISU on all three claims. Huss filed a motion for JNOV and new trial. The district court granted the motion for JNOV, concluding Huss proved each element of her disability-discrimination and failure-to-accommodate claims and that no reasonable mind could differ as to the findings on each element based on the evidence presented. The district court relied heavily on the testimony of Peter Englin, director of the Department of Residence. The court called Englin's

testimony "as close to a Perry Mason moment as I have seen in 27 years of the practice of law." The relevant testimony was as follows:

> Q. Are you aware [Huss] asked to be moved to Friley to be in the same building as you? A. No, but . . .
> Q. That could have been— A. It seems –
> Q.—a reasonable—could that have been a reasonable accommodation if it was important that she be close to you and able to respond. A. Yes.
> Q. So she could have been reasonably accommodated by being relocated to Friley Hall? A. I believe so, yes.
> Q. And then that would have enabled her to continue working with her team, would have been a minute away, in Helser? A. Yes.
> Q. So why did you refuse to place her in Friley? A. As I shared, I didn't know that she requested to be in Friley. And as I understand, when a request came in about office space—because we are continually looking at locations to house folks—the two spaces we had: One was a storage room and the other was across from the men's restroom.

Later it continued:

> Q. So as of the time you fired her and insisted that you could not relocate her, you just told this jury she could have been placed in Friley Hall? A. Yes
> Q. And that would have been a reasonable accommodation? A. In my opinion, yes.

After granting the motion for JNOV on the disability-discrimination and failure-to-accommodate claims, the court ordered a new trial on the limited issue of damages. ISU timely appealed; the new trial to determine damages has been stayed pending this appeal.

"The purpose of [JNOV] is to allow the district court an opportunity to correct any error in failing to direct a verdict." *Easton v. Howard*, 751 N.W.2d 1, 4 (Iowa 2008). "We . . . review a district court ruling on a motion for judgment notwithstanding the verdict for correction of errors at law." *Thornton v. Am. Interstate Ins. Co.*, 897 N.W.2d 445, 460 (Iowa 2017) (quoting *Gibson v. ITT*

*Hartford Ins.*, 621 N.W.2d 388, 391 (Iowa 2001)). "Our role is to decide whether there was sufficient evidence to justify submitting the case to the jury when viewing the evidence in the light most favorable to the nonmoving party." *Smith v. Iowa State Univ. of Sci. & Tech.*, 851 N.W.2d 1, 18 (Iowa 2014) (quoting *Van Sickle Constr. Co. v. Wachovia Commercial Mortg., Inc.*, 783 N.W.2d 684, 687 (Iowa 2010)). "Every legitimate inference which can be reasonably made from the evidence is considered, and if reasonable minds can differ on the issue, it is for the jury to decide." *Thacker v. Eldred*, 388 N.W.2d 665, 670 (Iowa Ct. App. 1986) (quoting *Blong v. Snyder*, 361 N.W.2d 312, 315 (Iowa Ct. App. 1984)).

> Simply put, we ask, was there sufficient evidence to generate a jury question? These are the same principles that the district court is bound to follow on a motion for directed verdict.
> Under this view of the evidence, if there is substantial evidence to support the claim or defense, the motion for directed verdict or for judgment notwithstanding the verdict should be denied. Conversely, without such evidence, a directed verdict or judgment notwithstanding the verdict is appropriate. Evidence is substantial when a reasonable mind would accept it as adequate to reach a conclusion.

*Johnson v. Dodgen*, 451 N.W.2d 168, 171 (Iowa 1990) (citations omitted). Because entry of JNOV is only appropriate when a reasonable fact-finder could only reach one conclusion from the presented evidence, it should be granted only in rare circumstances.

The jury was provided with the following instruction on disability discrimination:

> Your verdict must be for Plaintiff Luann Huss and against Defendants State of Iowa and Iowa State University on Plaintiff's claim of disability discrimination if all of the following elements have been proved by the preponderance of the evidence:
> First, Plaintiff suffered from an impairment;

Second, Plaintiff's impairment substantially limited her in one or more major life activities;

Third, Defendants terminated Plaintiff's employment;

Fourth, at the time of her termination, Plaintiff could have performed the essential functions of her job with or without reasonable accommodations;

Fifth, Plaintiff's impairment was a motivating factor in the Defendants' decision to terminate her employment.

If Plaintiff failed to prove any of these elements, you must find in favor of Defendants on her claim of disability discrimination. If Plaintiff proved all of these elements, you must find in favor of Plaintiff on this claim and consider her claim for damages.

The jury was also instructed as follows on Huss's reasonable accommodation claim:

In order for Plaintiff Luann Huss to recover on her claim of failure to provide a reasonable accommodation for her disability, she must prove all of the following propositions by a preponderance of the evidence:

1. Plaintiff had an impairment;
2. Plaintiff's impairment substantially limited her ability to perform a major life activity;
3. Defendants knew of the Plaintiff's impairment;
4. Plaintiff could have performed the essential functions of the job of Program Coordinator II at the time Defendants terminated her employment if Plaintiff had been provided with an accommodation of:
   a. Moving her to a different office;
   b. Closing the air loop in her office in Helser Hall;
   c. Providing her a respirator;
   d. Restructuring her job; or
   e. Providing assistance to find her another position with ISU;
5. The requested accommodation would have been reasonable; and
6. Defendants failed to provide a reasonable accommodation identified by Plaintiff and failed to provide any other reasonable accommodation.

If Plaintiff failed to prove any of these elements, you must find in favor of Defendants on her claim of disability discrimination. If Plaintiff proved all of these elements, you must find in favor of Plaintiff on this claim and consider her claim for damages.

For the purposes of this appeal, these instructions are the law of the case. *See In re Estate of Workman*, 903 N.W.2d 170, 175 (Iowa 2017).

When we review the entirety of the evidence submitted to the jury in the light most favorable to ISU, we conclude reasonable minds could reach differing conclusions regarding both causes of action. As a result, Huss failed to prove her claims as a matter of law and entry of JNOV was in error. *See State v. Keding*, 553 N.W.2d 305, 308 (Iowa 1996).

Although there was a fact question on many of the issues submitted to the jury, for the purposes of fleshing out our conclusion, we choose to focus on the reasonable accommodation element of both marshaling instructions. The jury was instructed:

> A "reasonable accommodation" is a modification to the work place which allows a person with a disability to perform the essential functions of the job or allows a person with a disability to enjoy the same benefits and privileges as an employee without a disability. An accommodation is unreasonable if it imposes an undue hardship on the operation of the employer's business.
> . . . .
> An employer is not required to give an employee the accommodation she preferred. The employer's obligation is to provide a reasonable accommodation that allows the employee to perform the essential functions of her job.

Unlike the district court, we cannot conclude the "Perry Mason" moment entitled Huss to JNOV. First, it seems to us that Englin's statement was made in the context of whether the move to Friley Hall would have impaired Huss's ability to work with her team and not whether the move would have addressed all of Huss's concerns. The jury certainly could have concluded the same. Second, the jury was free to conclude Englin's opinion was not more relevant on this issue than that of other witnesses, including both Huss's direct supervisor and Huss's

subordinate. Huss's direct supervisor testified that he did not believe Huss could be relocated and still carry out her job duties. Specifically, he noted the importance of having his subordinates in the same office location for impromptu discussions and meetings on construction projects. He discussed how Huss's position entailed rapidly responding to certain concerns, and he explained that relocating Huss would hinder rapid responses. He testified although it would be possible to communicate with Huss in a different building, it was not an efficient use of his time or his staff's time. He testified that Huss's office in Helser Hall did not test any differently for mold or other substances than any of the possible relocation areas. Huss's subordinate testified that when Huss was temporarily relocated out of Helser Hall it required more effort for the subordinate to do her job. She also testified that the Helser team was highly collaborative and she worked with the individuals in Helser "Multiple times a day. Pretty much every day." Third, another employee, who worked out of Friley Hall, testified Huss suffered an allergic reaction in her Friley office, calling into question whether a move to Friley would have resolved Huss's physical reactions to her workplace. We find the jury reasonably could have relied on the above-mentioned testimony to conclude moving Huss to Friley Hall was not a reasonable accommodation. Taken together, this evidence establishes it was erroneous for the district court to impose liability as a matter of law based solely on Englin's testimony.

There is also significant support in the record for the jury to find no accommodation would have allowed Huss to perform the essential functions of her job. *See, e.g., Gaul v. Lucent Tech. Inc.,* 134 F.3d 576, 581 (3d Cir. 1998) (affirming summary judgment on failure-to-accommodate claim in favor of

employer where proposed accommodation was impractical burden on employer). First, throughout the accommodation process, Huss claimed she had a severe mold allergy. According to her treating physician, "[e]xposure to minute amounts of mold in [the] workplace" would result in Huss having a "profound allergic response." "Indefinitely" moving Huss's office to a "building without mold" was her physician's suggested accommodation. On Huss's final documentation of disability form, the physician listed Huss's impairment as "severe allergies mold spore exposure" and explained Huss was "[c]urrently unable to tolerate any mold exposure." It was not until days before Huss ran out of approved leave that she submitted a letter from another doctor labeling her condition as a "severe disabling environmental allergy" with no mention of mold. In a separate application for long-term disability benefits, this second physician labeled Huss's condition "Multiple Chemical Sensitivity." Huss's treating physician testified when an individual has multiple chemical sensitivity syndrome "the things [he/she is] sensitive to [are] really not always identifiable" and an employer would not be able to test for minute amounts of mold. Given the testimony and recommendations made by Huss's physicians, it appears ISU had no way to effectively identify Huss's triggers in her work environment.

This inference is further supported by evidence that Huss experienced symptoms nearly everywhere. Huss acknowledged she "had issues in probably every building that belongs to the department of residence." Many of the reaction areas tested at normal mold levels. Huss testified she had similar reactions at the state fair; Younkers; Wal-Mart; Bed, Bath & Beyond; the Baltimore airport; the Boone County police station; and the Chicago airport. A doctor's note from

September 2013 reported Huss as saying "she is pretty sure that it does not really matter where or what she does for work or even if she does not work, she will still have misery because she has had reactions in stores and in areas outside of her work place."

Second, evidence presented established that a mold-free building is an impossibility. Two experts testified that no environment is mold free. Huss herself agreed ISU could not provide a mold-free work environment. Further, a human relations consultant reiterated that ISU "cannot disregard those [medical] recommendations/restrictions" instructing Huss was unable to tolerate any mold exposure. The consultant testified that ISU could not jeopardize Huss's health and safety by placing her in a workspace containing any amount of mold.

Third, evidence illustrated the extensive mold and environmental testing and remediation conducted by ISU in an effort to improve Huss's work environment. ISU conducted years of testing and remediation in an effort to aide Huss. Further, those tests showed there was no significant difference from a mold-spore-testing standpoint between Friley Hall and Huss's Helser office. ISU also completed other testing, which analyzed volatile organic compounds and particulate amounts in an attempt to pinpoint a specific issue. These test results were never problematic. An independent expert testified that the testing completed by ISU "was pretty complete." The expert stated, "I think for this number of years, they did an awful lot. I've never been asked to do this much for a particular client on one case ever, really. So they did a lot more than we would ever do, probably." Huss herself testified about the extensive remediation efforts undertaken in her office including: repeated mold and VOC testing, air duct cleaning, removing air

duct lining that could facilitate mold, air handling unit cleaning, and replacing ceiling tiles and carpet. She was also provided a half-mask respirator and an air purifier. Her coworkers modified their activities by rescheduling campus-wide meetings to rooms with low mold levels and authorizing Huss to avoid certain rooms on facility tours.

Taken together, the jury could have relied on this evidence to reasonably conclude no possible reasonable accommodation would have allowed Huss to perform the essential functions of her job. The district court erred in concluding reasonable minds could not differ on the issue when the evidence is viewed in the light most favorable to ISU.

In addition to this element, there are other elements on which there is evidence to support the jury's verdict. For example, in support of her disability discrimination claim, Huss was required to prove her "impairment was a motivating factor in the Defendants' decision to terminate her employment." We cannot say Huss proved this element as a matter of law; there is substantial evidence in the record that ISU thought Huss was an outstanding employee and did everything it could to continue to employ her. ISU terminated Huss's employment only when she had no leave and could not return to work.

For these reasons, we conclude the district court erred in granting Huss's motion for judgment notwithstanding the verdict. We reverse the judgment of the district court and remand this matter for reinstatement of the jury's verdict.

**REVERSED AND REMANDED.**