# IN THE COURT OF APPEALS OF IOWA

No. 18-1397
Filed November 27, 2019


**KARA GANKA, As Administrator of the Estate of BRONSON GANKA, KARA GANKA, Individually and as Parent and Next Friend of D.G., M.G., and A.G., Minors,**
        Plaintiffs-Appellants/Cross-Appellees,

**vs.**

**JEFFREY CLARK,**
        Defendant-Appellee/Cross-Appellant.
_____


        Appeal from the Iowa District Court for Johnson County, Andrew Chappell, Judge.


        Kara Ganka appeals the district court's grant of judgment notwithstanding the verdict in a gross-negligence case. **AFFIRMED ON APPEAL, CROSS-APPEAL DISMISSED AS MOOT.**


        Laura Schultes, Pressley Henningsen, Brian Ivers, and Kylie Liu of RSH Legal, P.C., Cedar Rapids, for appellants/cross-appellees.

        Lee P. Hook of Peddicord Wharton LLP, West Des Moines, for appellee/cross-appellant.


        Heard by Bower, C.J., and May and Greer, JJ.

**MAY, Judge.**

Bronson Ganka died because of a workplace injury. His widow, Kara Ganka,[1] filed this gross-negligence action against Bronson's co-employee, Jeff Clark. The jury found in favor of Kara. Jeff moved for judgment notwithstanding the verdict (JNOV). The district court granted the motion. We affirm.

## I. Facts and Prior Proceedings

Jeff worked for Apartments Downtown, a property-management business owned by his parents. While he denies having a formal title, his duties included assigning crews of workers to complete construction tasks.

Bronson was also employed by Apartments Downtown. He was the leader of a three-person crew. The other two members were his brother, Weston Ganka, and Allen Singleton.

Jeff regularly assigned tasks to Bronson and his crew. It is undisputed that Jeff would typically give little guidance on how tasks should be completed.

In April 2014, Jeff tasked Bronson's crew with drilling vent holes in the front of a building. The holes needed to be drilled above an awning at a height of approximately twelve to thirteen feet. Bronson asked Jeff if the crew could use a telehandler[2] to complete the task. There is some dispute as to how many times this was discussed. It is undisputed, however, Jeff denied the request because use of the telehandler would block the street and require a permit.

---

[1] Kara brings this suit as the administrator of Bronson's estate, as an individual, and as the parent of her three children. While she is appealing in multiple roles, we refer to her in the singular form throughout this opinion.
[2] A telehandler is a telescoping forklift.

It was also undisputed that Bronson's crew had access to a number of pieces of equipment, including a scissor lift, scaffolding, and multiple ladders. Jeff knew these options were available to Bronson's crew.

It is also undisputed that—other than assigning the task to be completed and telling Bronson not to use the telehandler—Jeff did not direct the crew's work. Instead, Jeff assumed Bronson would determine how best to accomplish the task.

Ultimately, Bronson chose not to use the scissor lift or scaffolding. Instead, Bronson chose a specific ladder, climbed up that ladder, and began to drill. His brother, Weston, held the ladder.

Something went wrong. The drill may have "caught," the ladder may have failed, or both. Regardless, Bronson dropped the drill. Bronson then fell from the ladder. He landed on the pavement below. He died days later.

The day after the accident, Allen Singleton completed the drilling task without incident using the scissor lift that had been on site at the time of the accident.

Bronson's wife, Kara, brought this gross-negligence suit against Jeff. A jury trial commenced in February 2018. At the end of Kara's evidence, Jeff moved for a directed verdict. The district court reserved ruling on the motion.[3] At the end of all evidence, Jeff renewed his motion. The district court again reserved ruling.

---

[3] The district court cited the "'Uhlenhopp rule' which encourages the district court to deny a motion for directed verdict, even if it is clear the movant is entitled to judgment as a matter of law." *State v. Keding*, 553 N.W.2d 305, 308 (Iowa 1996) (citation omitted). "Instead, the court should submit the case to the jury to avoid another trial in case of error." *Id.* "After the jury returns a verdict the court may grant a motion for judgment notwithstanding the verdict, as long as it is based on the same grounds as the original matter at the close of evidence and the movant is entitled to the judgment as a matter of law." *Id.*

The jury found (1) Jeff was grossly negligent, (2) Jeff was eighty percent at fault, and (3) total damages were seven million dollars. Jeff moved for JNOV or a new trial. In a detailed ruling, the district court concluded the evidence was insufficient to establish gross negligence under Iowa law. Accordingly, the court granted Jeff's motion for JNOV. Kara now appeals.[4]

## II. Standard of Review

We review the district court's ruling on a motion for JNOV for correction of errors at law. *Gibson v. ITT Harford Ins. Co.*, 621 N.W.2d 388, 391 (Iowa 2001); *accord* Iowa R. App. P. 6.907. "We inquire whether substantial evidence exists to support each element of the plaintiff's claim, justifying submission of the case to the jury." *Gibson*, 621 N.W.2d at 391. "In making this determination, we view the evidence in the light most favorable to the nonmoving party." *Id.*

## III. Analysis

"An injured worker generally is entitled to workers' compensation for injuries without regard to the fault of the worker, employer, or the worker's coemployees." *Walker v. Mlakar*, 489 N.W.2d 401, 405 (Iowa 1992). "In exchange, the employer and coemployees are given immunity from common law tort liability." *Id.*

There is a "narrow" exception. *Id.* Iowa Code section 85.20(2) (2016) allows a co-employee to be sued for injuries "caused by [the co-employee's] gross negligence amounting to such lack of care as to amount to wanton neglect for the safety of another." Starting with *Thompson v. Bohlken*, 312 N.W.2d 501, 505 (Iowa

---

[4] Jeff cross-appeals. He claims two jury instructions were improper. He also claims expert testimony was improperly admitted. Because we affirm the JNOV, however, these issues are moot.

1981), our courts have held three elements must be proven to establish a gross negligence claim: "(1) knowledge of the peril to be apprehended; (2) knowledge that injury is a probable, as opposed to a possible, result of danger; and (3) a conscious failure to avoid the peril." "Allegations of gross negligence carry a high burden of proof, and a plaintiff must satisfy all three elements before liability can attach." *Anderson v. Bushong*, No. 12-0640, 2013 WL 530961, at *3 (Iowa Ct. App. Feb. 13, 2013) (citation omitted). The three-part test is "necessarily a stringent one because undesirable consequences could result from improvidently holding a co-employee liable to a fellow employee." *Juarez v. Horstman*, No. 0-990, 2011 WL 441523, at *2 (Iowa Ct. App. Feb. 9, 2011). Specifically, "when an employee is held liable to another[,] the main cost of the injury . . . [can] be unreasonably shifted from the employer, where the workers' compensation act places it, to a fellow employee, where the act does not place it." *Walker*, 489 N.W.2d at 405 (quoting *Taylor v. Peck*, 382 N.W.2d 123, 126 n.2 (Iowa 1986)). "If the fellow employee who was held liable to a co-employee was indemnified by his or her employer, such an employer could be burdened with common law damages beyond the employer's statutory workers' compensation liability." *Id.* (quoting *Taylor*, 382 N.W.2d at 126 n.2).

Like the district court, we assume Kara's evidence was sufficient as to the first *Thompson* element. We focus instead on the second element, whether Jeff had "knowledge that injury [was] a probable, as opposed to a possible," result of his actions. *See Thompson*, 312 N.W.2d at 505. As the district court properly observed, this second element is usually "determinative" because "it is exceptionally difficult for plaintiffs to prove that the defendant had the requisite

knowledge an injury was *probable,* as opposed to possible, under the circumstances." It requires "more than a showing of the defendant's actual or constructive knowledge of the 'actuarial foreseeability' that accidents will happen." *Hernandez v. Midwest Gas Co.,* 523 N.W.2d 300, 305 (Iowa Ct. App. 1994). Rather, evidence must show the defendant "knew their actions would place their [co-employee] in imminent danger, so that someone would more likely than not be injured by the conduct." *Id.*

Like the district court, we do not believe the evidence met this standard. Certainly, the task assigned by Jeff was not risk-free. Although Jeff had no specialized safety training, he knew accidents can happen when people work at heights. Jeff could have taken steps to reduce this risk. He could have permitted the use of a telehandler, arranged for his crews to have specialized training, or made sure the crewmembers read safety manuals.[5]

Even so, the record does not suggest Jeff had "knowledge" that his actions would make an injury "probable." *Thompson*, 312 N.W.2d at 505. Although Jeff assigned the job, he left the details to his trusted crew. He did not go with them to supervise. He did not tell them how to complete their work. His only guidance was to not use the telehandler. He knew there were many other pieces of equipment available to them, including various ladders, scaffolding, and a scissor lift—the same scissor lift that was safely used to complete the job following the accident. But he did not know which piece of equipment they would choose. He did not know the crew would choose to use a ladder over any other piece of equipment.

---

[5] To be clear, we do not suggest Jeff had a legal duty to take any of these steps. We merely acknowledge they were possible courses of action.

And there is no evidence Jeff knew, or should have known, that using a ladder would "probably" result in injury to Bronson. Indeed, Bronson's own brother, Weston, was holding the ladder. Weston did not believe that Bronson would be injured. We agree with the district court,

> It is not reasonable to find that [Jeff] would or should have known that injury was probable from the work the crew was doing, even though he did not know how it would be done, when the person holding the ladder for his brother did not believe injury was probable.

Because the evidence did not satisfy the second *Thompson* element, the verdict could not stand. The district court had no choice but to grant Jeff's motion for judgment notwithstanding the verdict. We affirm.

**AFFIRMED ON APPEAL, CROSS-APPEAL DISMISSED AS MOOT.**