# IN THE COURT OF APPEALS OF IOWA

———————————

No. 25-0251
Filed March 11, 2026

———————————

**Jill L. Struve and Steven E. Struve,**
Plaintiffs–Appellants,

v.

**Mark Isaacson,**
Defendant–Appellee.

———————————

Appeal from the Iowa District Court for Polk County,
The Honorable Lawrence P. McLellan, Judge.

———————————

**AFFIRMED**

———————————

Stephen E. Doohen of Whitfield & Eddy, P.L.C., Des Moines, attorney for
appellants.

Jack Hilmes, Erik P. Bergeland, Joseph F. Moser, Jeffrey R. Kappelman, and
Peter R. Lapointe of Finley Law Firm, P.C., Des Moines, attorneys for
appellee.

———————————

Considered without oral argument
by Badding, P.J., Buller, J., and Doyle, S.J.
Opinion by Doyle, S.J.

**DOYLE, Senior Judge.**

Jill and Steven Struve appeal the adverse rulings granting summary judgment and directed verdicts on their claims of medical malpractice against Dr. Mark Isaacson that stem from a total knee arthroplasty (TKA) he performed on Jill's right knee in December 2020. The Struves claimed Dr. Isaacson was professionally negligent by breaching the standard of professional care for informed consent, tourniquet use, dissection, and referral to a plastic surgeon. The district court granted summary judgment on their claim that Dr. Isaacson was untimely in referring Jill to a plastic surgeon. After the Struves rested on the third day of the jury trial in January 2025, the court granted Dr. Isaacson directed verdicts on the three remaining claims.

## SCOPE AND STANDARD OF REVIEW

We review rulings granting summary judgment and directed verdicts for correction of errors at law. *See, e.g.*, *Nelson v. Lindaman*, 867 N.W.2d 1, 6 (Iowa 2015) (addressing review of summary judgment decisions); *Pavone v. Kirk*, 801 N.W.2d 477, 486-87 (Iowa 2011) (addressing review of directed verdicts).

> In reviewing both the summary judgment and directed verdict, we review the evidence in the light most favorable to the resisting party. The court must consider on behalf of the nonmoving party every legitimate in[]ference that can be reasonably deduced from the record. Inferences are legitimate when they are rational, reasonable, and otherwise permissible under the governing substantive law. If reasonable minds may differ on the resolution of an issue, a genuine issue of material fact exists.

*Thornton v. Am. Interstate Ins. Co.*, 897 N.W.2d 445, 460 (Iowa 2017) (internal quotation marks and citations omitted). "Speculation is not sufficient to generate a genuine issue of fact." *Nelson*, 867 N.W.2d at 7 (citation omitted).

## DISCUSSION

The Struves challenge the dismissal of each of their claims of medical malpractice against Dr. Isaacson. "To establish a prima facie case of medical malpractice, a plaintiff must produce evidence that (1) establishes the applicable standard of care, (2) demonstrates a violation of this standard, and (3) develops a causal relationship between the violation and the injury sustained." *Struck v. Mercy Health Servs.-Iowa Corp.*, 973 N.W.2d 533, 539 (Iowa 2022) (citation omitted). An expert witness is ordinarily needed to show the applicable standard of care and its breach. *Id.*

## I. Directed verdicts.

We start with the verdicts directed in favor of Dr. Isaacson on the Struves' claims that he breached the standard of professional care for informed consent, tourniquet use, and dissection. The court must direct a verdict in favor of the defendant if the plaintiff does not present substantial evidence showing each element of the claim. *See Pavone*, 801 N.W.2d at 487. But if reasonable minds could disagree on whether each element was proved, "directed verdict is improper and the case must go to the jury." *Id.* (citation omitted). The question is whether reasonable minds could disagree on whether Dr. Isaacson breached the professional standard of care on informed consent, tourniquet use, and dissection.

The Struves argue that they presented substantial evidence that Dr. Isaacson breached the professional standard of care for each claim. At trial, they called Dr. Glenn Whitted, an orthopedic surgeon specializing in joint replacement who has performed about 12,000 TKAs over a thirty-five-year career. Dr. Whitted also has specialized training to act as "a referral doctor for people who have very special concerns or a difficult situation that would make their knee replacement operation more than the average

orthopedic surgeon would wish to undertake." After interviewing and physically examining Jill, Dr. Whitted testified that he did not consider her TKA to be routine surgery because of past surgeries on her right knee. Dr. Whitted testified that if he was treating a patient with a similar surgical history, he would speak at length about informed consent and explain added complications that can arise when there have been multiple knee surgeries. Dr. Whitted also testified that Dr. Isaacson's tourniquet use of forty-nine minutes is average use for a routine knee replacement, but that he would have limited tourniquet use to about ten minutes if presented with Jill's history.

The district court found that Dr. Whitted's testimony failed to show the professional standard of care:

> [T]he case law in Iowa is clear that it's not sufficient to establish the standard of care based upon what the testifying expert might have done or would have done. He has to establish that what he would have done is in fact the standard of care; in other words, this is what every board-certified orthopedic surgeon would have done . . . .

This is a correct statement of the law. *See DeBurkarte v. Louvar*, 393 N.W.2d 131, 133 (Iowa 1986) ("We agree with the defendant that testimony on what another physician would do is not sufficient to establish a standard of care."); *Freese v. Lemmon*, 267 N.W.2d 680, 688 (Iowa 1978) (emphasizing that in proving the professional standard of care for medical malpractice claims, the question is not what the expert witness would have done but "what the ordinary physician of good standing would do"); *Surgical Consultants, P.C. v. Ball*, 447 N.W.2d 676, 681 (Iowa Ct. App. 1989) ("A physician's testimony as to his or her personal practices or policies, or as to how he or she would handle a specific case, does not suffice as evidence of the standard of care required of a physician of good standing in similar circumstances."). Because Dr. Whitted did not explain the standard of care for a board-certified

orthopedic surgeon performing a TKA under the same circumstances nor opine that Dr. Isaacson breached the standard of care, his testimony does not prove a prima facie case of medical malpractice.

The Struves argue that the district court erred by requiring "magic words" when the standard of care can be inferred from Dr. Whitted's testimony. Although Dr. Whitted could have meant that he would act differently because the standard of care for competent orthopedic surgeons so requires, he never said that. It is equally likely that Dr. Whitted provides a level of care superior to the minimum required by professional standards. The Struves claim that because reasonable minds could disagree over what Dr. Whitted meant, it was a question for the jury to decide. But the Struves' argument is not based on different conclusions inferred from stated facts; it requires assuming and relying on facts that Dr. Whitted did not testify about, which is impermissible speculation. *See Buboltz v. Birusingh*, 962 N.W.2d 747, 755 (Iowa 2021) ("We will draw reasonable inferences from facts, but we cannot assume facts through conjecture."); *Fitzgerald v. Salsbury Chem., Inc.*, 613 N.W.2d 275, 287 (Iowa 2000) ("An inference . . . must not be based on speculation or conjecture."). That is a bridge too far.

The Struves also claim that a January 2021 text message Dr. Isaacson sent Jill is an admission he breached the professional standard of care. In that message, Dr. Isaacson said that he did not know what compromised the blood supply to the side of Jill's incision because nothing about the TKA "was difficult/unique." Citing Dr. Whitted's testimony that Jill's surgery was not routine, the Struves argue that the jury could infer Dr. Isaacson was incapable of appreciating the care he should have provided and therefore breached it.

A defendant physician's admission of medical malpractice can satisfy the requirement for direct expert testimony needed to show malpractice. *See*

*Hill v. McCartney*, 590 N.W.2d 52, 56 (Iowa Ct. App. 1998). But to prove malpractice, the defendant's statement "must be an admission of negligence or lack of skill ordinarily required for the performance of the work undertaken." *See id.* 57. To view Dr. Isaacson's text message as an admission of negligence first requires two assumptions: (1) that a higher standard of care was needed to perform Jill's TKA and (2) that Dr. Isaacson did not meet that higher standard. Neither are shown by the evidence. Even if Dr. Isaacson owed Jill a higher standard of care than is owed those who undergo "routine" TKAs, his ignorance of that duty does not mean he violated it; it is possible for a doctor who misapprehends the standard of care to meet or exceed it.

The district court did a superb job addressing the evidence the Struves presented to show a prima facie case of medical malpractice on each ground and concluding that evidence falls short of their burden. It also recognized the need to exercise caution[1] in doing so:

> I don't do it lightly. I just want to say that. . . . I understand this is a very important case to the Struves, very important case for Dr. Isaacson. I know it's been a long time. I understand the emotion, the angst that you've gone through, but I am required to follow the law on what the plaintiff needs to establish in order for a jury to make a decision here, and I don't believe Dr. Whitted's testimony does that, either on the standard of care, establishing what it is and how Dr. Isaacson breached it; nor do I believe he's established that anything Dr. Isaacson did here caused the injury.

---

[1] The "Uhlenhopp rule" encourages the district court to deny motions for directed verdict even when the movant is entitled to judgment as a matter of law. *See, e.g.*, *State v. Keding*, 553 N.W.2d 305, 308 (Iowa 1996). By giving the case to the jury, the court avoids the need for retrial in case of error while reserving the ability to grant judgment notwithstanding the verdict on the same grounds, if necessary. *See id.*

Having reviewed the record and the Struves' arguments on appeal, we find no error.

## II.     Summary judgment.

The Struves also contend the district court erred by granting summary judgment on their claim for untimely diagnosis and referral.  Dr. Isaacson moved for summary judgment on this claim by arguing that the undisputed evidence showed Jill's referral to Dr. Schurman, a plastic surgeon, did not cause injury.

The district court granted summary judgment for Dr. Isaacson on the claim of untimely diagnosis and referral because it found the Struves abandoned that claim.  The court cited their statement of facts, in which the Struves noted that "Dr. Whitted has clearly opined, repeatedly, that although he is quite troubled by the later referral the excessive dissection, the 'scraping and scraping' was the cause of the problem that was addressed by Dr. Schurman in a second surgery."  The court also cited their counsel's statement at oral argument that "Dr. Whitted tells us—and there certainly is a fact question with this—that the reason that tissue died is not the delay in getting to Dr. Schurman, it's because of the surgery that Dr. Isaacson did."

On appeal, the Struves contend that the evidence shows there is a factual dispute about whether Dr. Isaacson's untimely referral injured Jill, but they do not address the court's finding that they abandoned the claim.  Because their arguments before the district court waived their claim that Dr. Isaacson's late referral to Dr. Schurman injured Jill, we affirm the district court's grant of summary judgment on that issue.

**AFFIRMED.**